Herbert A. Fowler

    v.                                Civil No. 18-cv-244-LM
                                       Opinion No. 2019 DNH 041

Michael Zenk, N.H. State Prison Warden,
and Stephen O'Rourke, N.H. Department
of Corrections Hearing Officer

**O R D E R**

Before the court is defendants' motion for summary judgment (doc. no. 13). The pro se plaintiff, Herbert A. Fowler, has not responded to the motion.[1]

---

[1] The court issued a notice to Fowler explaining the nature of summary judgment and the manner in which he was required to respond to the defendants' summary judgment motion. See Doc. No. 21. Plaintiff has not filed any document in this case since he appeared at a hearing on his motion to appoint counsel on August 29, 2018. That motion was denied without prejudice. See Aug. 30, 2018 Order (Doc. No. 22). Consistent with the permission provided by Fowler in the August 29, 2018 hearing, see id., the court solicited from defendants' counsel, in December 2018, a notice regarding whether plaintiff's health could have been a cause of his failure to respond to the summary judgment motion. Counsel's notice states that Fowler's treating psychiatric nurse practitioner reported that his mental health condition would not have impaired his ability to meet the December 10, 2018 deadline for objecting to the motion for summary judgment. See Doc. No. 23. A copy of that notice was served on Fowler, but he did not respond.

"Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, 'presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'" Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 20-21 (1st Cir. 2018) (citation omitted); see also Fed. R. Civ. P. 56(a)).  To obtain summary judgment, "the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 332 (1986).  Once the moving party makes the required showing, "'the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor.'" Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016) (citations omitted).  "This demonstration must be accomplished by reference to materials of evidentiary quality," and that evidence must be "'significantly probative,'" and "more than 'merely colorable.'"  Id. (citations omitted).  The nonmoving party's failure to make the requisite showing "entitles the moving party to summary judgment." Id.

<u>Background</u>

I.  <u>Undisputed Facts</u>

Fowler suffers from a diagnosed, serious mental illness. <u>See</u> Doc. Nos. 18, 19.  He has engaged in acts of cutting himself while incarcerated at the New Hampshire State Prison ("NHSP").

On December 19, 2013, Fowler sliced his arms and was transported to the Catholic Medical Center Emergency Department for treatment.  Prison officials charged Fowler with the disciplinary offense of "self-injury" relating to that incident ("2013 charge").  Doc. No. 13-2, at 2.  The officer assigned to investigate that charge noted that when interviewed, Fowler said he was pleading "not guilty," and that he was working with his clinician to be classified as having a Serious and Persistent Mental Illness ("SPMI").  <u>Id.</u> at 3.  The investigating officer further noted that Fowler was "not currently SPMI."  <u>Id.</u>  If Fowler had been classified as SPMI at that time, that classification could have affected the processing of the disciplinary charge and the penalty imposed.  <u>See, e.g.</u>, N.H. Department of Corrections ("DOC") Policy and Procedure Directive ("PPD") 5.25(IV)(C)(3)(f).[2]

_____

[2]Defendants filed a version of PPD 5.25 that bears an effective date of 08/01/14, <u>see</u> doc. no. 24-2.  The court has reviewed a superseded version of PPD 5.25, bearing an effective date of 10/25/10, which appears to have been in effect as to the 2013 charge.  The provisions relative to SPMI in the 10/25/10

version of PPD 5.25 are reproduced below, in pertinent part, and are identical to the comparable provisions in Document No. 24-2:

    C.    Reports of Instances of Punishable Conduct

    . . . .

    3.  Disciplinary reports filed by staff members in a prison facility shall be processed in the following manner:

    . . . .

    d.   The supervisor (Sergeant or above) assigned to investigate the violation will determine if the inmate is listed as having a Serious and Persistent Mental Illness (SPMI) via "Alerts" in CORIS [Corrections Information System].

    e.   If the inmate is not listed as having a SPMI, the investigation supervisor will proceed to (g) below.

    f.   If the inmate is listed as having a SPMI, the supervisor will contact the designated mental health professional (attachment 5) who will review the incident within 72 hours and determine if the actions that resulted in the disciplinary report were proximate to the SPMI, or if the actions were behavioral in nature.  If it is determined that the inmate's actions were due to the SPMI, the mental health professional will at that time make recommendations as how to proceed via the *Mental Health Consultation to Disciplinary Process* form [Attachment 4].  If it is determined that the inmate's actions were behavioral in nature, the investigation officer will proceed as noted in (g) considering any recommendations made by the mental health staff. Once completed by the mental health staff, the *Mental Health Consultation to Disciplinary Process* form will be provided to the unit supervisor and made a permanent attachment to the disciplinary report.

The investigating officer recommended processing Fowler's disciplinary report on the 2013 charge as a "minor disciplinary," and further recommended a sanction including "restitution for medical expenses imposed." Doc. No. 13-2, at 2. A disciplinary hearing was scheduled for January 9, 2014.

Fowler pleaded guilty on the date of his hearing. See Doc. No. 13-1. New Hampshire Department of Corrections ("DOC") Hearing Officer Lt. John Morin received Mr. Fowler's guilty plea and imposed the recommended sanction of "Medical Restitution." See id.; Doc. No. 13-2, at 3, 4, 5.

Twenty months later, on August 19, 2015, DOC Hearing Officer Stephen R. O'Rourke issued a notice, copied to Fowler and Inmate Accounts, informing Fowler that he owed $809.24 in restitution for medical expenses relating to the 2013 Charge. See Doc. No. 13-3. DOC accountant Loretta Coulombe has averred and substantiated that that amount corresponds with the "charges incurred and amounts paid by the Department of Corrections, after Medicaid discounts, for emergency services" relating to the 2013 Charge. Doc. No. 13-6; Doc. Nos. 13-7, 13-8, 13-9.

_____

g.    The supervisor investigating the disciplinary report will contact the inmate(s) involved and will ask them to provide statements relating to their version of the events. . . .

PPD 5.25(IV)(C)(3)(d)-(g) (eff. 10/25/10); Doc. No. 24-2.

On October 4, 2016, Fowler sliced his arms again, necessitating an ambulance trip to the Concord Hospital Emergency Department. Prison officials charged Fowler with two disciplinary offenses arising from that incident, including a charge of self-injury ("2016 Charge"). See Doc. No. 13-4. The investigating officer noted Fowler's statement, "I'm guilty." Id., at 2. The disciplinary report listed, as part of the recommended penalty, "100% Medical Restitution -- All medical treatment charges (transport, hospital treatment, medication costs, etc.)." Id. On October 11, 2016, DOC Lt. Andrew Newcomb accepted Fowler's guilty plea to the disciplinary charges and imposed the recommended sanctions. See id.; see also Doc. No. 13-1. Major Jon Fouts marked the disciplinary report bearing the record of Fowler's plea and sentence as "approved" on October 12, 2016. See Doc. No. 13-4, at 3. On December 11, 2017, Officer O'Rourke issued a notice informing Fowler that he owed $915.18 in restitution relating to the 2016 Charge. See Doc. No. 13-5. Coulombe has affirmed and substantiated that that amount is what was paid by the DOC, after Medicaid discounts, for emergency services relating to the 2016 Charge. See Doc. No. 13-6; Doc. Nos. 13-10, 13-11, 13-12.

II.  DOC Policy and State Law

At all relevant times,[3] PPD 5.25 has identified "self-injury" as a disciplinary infraction punishable by sanctions including "restitution."  See PPD 5.25, Attach. 2 (Doc. No. 24-2).  PPD 5.25(IV)(F)(17) provides that if restitution is required by the hearing officer as part of the sanction for a disciplinary offense, the Inmate Accounts Office, upon notice, will debit the amount from the inmate's account.  See Doc. No. 24-2.  PPD 3.09(IV)(E) has provided at all relevant times that if restitution is ordered for a disciplinary offense, inmate pay will be diverted from deposit to the inmate's trust account to satisfy that obligation.  See PPD 3.09(IV)(E) (Doc. No. 24-3).  PPD 5.25, Attachment 2, states that "Inmates will not be charged monetary damages, such as the replacement value of destroyed property if the infraction is found to be a proximate result" of an inmate's SPMI.  Doc. No. 24-2.

At all times relevant to this case, state law has provided that "[n]o inmate shall be subject to deductions from moneys credited to the inmate's account" for repayment of the costs of treating self-inflicted injuries, "until the inmate has been

_____

[3]The pertinent provisions of and attachments to the superseded PPD 5.25 (eff. 10/25/10), apparently in effect at the time of the 2013 charge, are identical to the corresponding provisions and attachments to Document No. 24-2, the 08/01/14 PPD, which appears to have been in effect in 2016.

afforded a due process hearing and has been found guilty." N.H.
Rev. Stat. Ann. ("RSA") § 622:31-a(VII). DOC policy allows
inmates to plead guilty to disciplinary charges at the
investigation phase, before a hearing, by signing the
disciplinary report form, waiving the right to a hearing,
waiving the right to an administrative appeal, and accepting the
offered punishment. <u>See</u> PPD 5.25(IV)(C)(3)(h) (Doc. No. 24-2).
"All pleas shall be reviewed and approved by the facility's
Chief of Security/designee. The facility's Chief of
Security/designee shall ensure that such pleas are given
voluntarily, knowingly, and intelligently." PPD
5.25(IV)(C)(3)(i) (Doc. No. 24-2).


III. <u>Claims</u>

　　　Fowler has asserted the following claims in this lawsuit[4]:

　　　1.　　Fowler was deprived of his Fourteenth Amendment right
　　　to procedural due process, in that:

　　　　　　a.　　The hearing officer who accepted Fowler's guilty
　　　　　　plea to the 2013 charge imposed medical restitution as
　　　　　　part of the punishment for a disciplinary conviction
　　　　　　in January 2014, based on Fowler's guilty plea and
　　　　　　waiver of the right to a hearing, which Fowler

_____

　　　[4]Upon further review, in light of exhibits to Doc. No. 13
filed by defendants, <u>see</u> Doc. Nos. 13, 24, this court has
recharacterized (and renumbered) the claims asserted by Fowler,
pursuant to the its authority under 28 U.S.C. §§ 1915A and
1915(e)(2). The court deems the claims enumerated in this Order
to be the claims in Fowler's Complaint at issue at this time.

executed while suffering from mental illness and believing the amount of restitution to be zero;

b.    The hearing officer who accepted Fowler's guilty plea to the 2016 charge imposed medical restitution as part of the punishment for a disciplinary conviction in October 2016, based on Fowler's guilty plea and waiver of the right to a hearing, which Fowler executed while suffering from mental illness and believing the amount of restitution to be zero; and

c.    Hearing Officer Stephen O'Rourke, (i.) in August 2015 and (ii.) December 2017, provided notice of the amounts to be debited from Fowler's funds as medical restitution, based on Fowler's guilty pleas and waivers which Fowler executed while suffering from mental illness and believing the amount of restitution to be zero.

2.    Fowler was deprived of his Fourteenth Amendment right to substantive due process, in that:

a.    The hearing officer who accepted Fowler's guilty plea to the 2013 charge imposed medical restitution as part of the punishment for a disciplinary conviction of self-injury in January 2014, although Fowler's self-injury resulted from his severe mental illness;

b.    The hearing officer who accepted Fowler's guilty plea to the 2016 charge imposed medical restitution as part of the punishment for a disciplinary conviction of self-injury in October 2016, although Fowler's self-injury resulted from his severe mental illness; and

c.    Hearing Officer Stephen O'Rourke in August 2015 and December 2017 issued a notice establishing the amounts to be debited from Fowler's funds for his disciplinary convictions of self-injury, although Fowler's self-injury resulted from his severe mental illness.

3.    The amount of restitution Fowler is required to pay is arbitrary, in violation of Fowler's Fourteenth Amendment right to substantive due process, as the DOC did not incur any unreimbursed expenses that the DOC was not obligated to incur in treating Fowler's injuries.

4.    The imposition of restitution as a penalty, (a.) in January 2014 and (b.) in October 2016, violated Fowler's Eighth Amendment right not to be subjected to an excessive fine.

5.    The imposition of restitution as a penalty, under the circumstances, constituted the torts of (a.) abuse of process and (b.) intentional infliction of emotional distress, under state law.

See Apr. 27, 2018 Order (Doc. No. 4).  The court allowed claims for damages to proceed against (former) NHSP Warden Michael Zenk and Hearing Officer O'Rourke in their individual capacities and allowed claims for injunctive relief to proceed as official capacity claims.  See id.[5]


                              Discussion

I.   Claims against Zenk

     Defendants move for summary judgment on Fowler's claims against defendant (former) NHSP Warden Zenk, arguing that Zenk took no action as to the guilty pleas and restitution at issue. Defendants have filed exhibits showing that Lts. John Morin and

_____

     [5]In the instant motion (doc. no. 13), defendants identified the officers who accepted the pleas and imposed sentences upon Fowler as Lts. Andrew Newcomb and John Morin.  This court in the August 29, 2018 hearing in this case inquired whether counsel from the New Hampshire Attorney General's Office would object to adding those officers to the list of defendants.  Counsel did not object.  This court then issued an Order explicitly taking under advisement the issue of whether to add those defendants, pending receipt of a motion seeking such relief.  See Aug. 30, 2018 Order, at 1 n.1 (Doc. No. 20).

Andrew Newcomb accepted the pleas and imposed the sentences, and that Hearing Officer Stephen O'Rourke provided Fowler with notices of the amount of restitution to be debited from his inmate pay.  While PPD 5.25(IV)(F)(20) states that all "disciplinary hearings" will be "reviewed by the Warden/designee to assure conformity with policy and procedures," see doc. no. 24-2, it is undisputed that Fowler's disciplinary proceedings were resolved without a hearing, and nothing before the court otherwise suggests that Zenk in fact reviewed Fowler's pleas and restitution orders, or considered any appeal relating to those matters.

To the extent plaintiff has joined Zenk based on a claim of vicarious liability, the law is settled that respondeat superior is unavailable in the context of claims asserted under 42 U.S.C. § 1983.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Plaintiff has not stated a claim against Zenk that can survive summary judgment.  Accordingly, defendants' motion (doc. no. 13) is granted, to the extent the court enters judgment as a matter of law in Zenk's favor as to all of Fowler's claims asserted against him.


II.  <u>Procedural Due Process Claims (Claims 1(a)-(c))</u>

Fowler asserts in Claims 1(a)-(c) that his plea and waivers executed in 2014 and 2016 were not knowing and intelligent, as

he executed those pleas while suffering from a serious mental illness, and he believed he had health insurance that covered all of his medical costs, negating the impact of any restitution order. For those reasons, he claims, the imposition of restitution sanctions and subsequent debiting of his inmate funds deprived him of property without due process.

A.    Protected Property Interest

The Fourteenth Amendment prohibits state deprivation of property or liberty without due process of law. Courts have concluded that inmates have a protected property interest in funds that may become subject to restitution orders in disciplinary proceedings. See generally Burns v. Pa. Dep't of Corr., 544 F.3d 279, 291 (3d Cir. 2008) ("Burns I"); see also Burns v. Pa. Dep't of Corr., 642 F.3d 163, 171 (3d Cir. 2011) ("Burns II") (plaintiff "was entitled to procedural due process at his disciplinary hearing because assessment of his inmate account for the costs of . . . medical expenses was a possible consequence of conviction of the infractions he was charged with"); Ryder v. Varano, No. 3:12-CV-614, 2013 U.S. Dist. LEXIS 133778, at *8 n.4, 2013 WL 5299173, at *3 n.4 (M.D. Pa. Sept. 18, 2013) (inmate has protected interest in funds he earned which were docked because of alleged disciplinary infraction). Cf. Young v. Wall, 642 F.3d 49, 53 (1st Cir. 2011) ("It is clear

beyond hope of contradiction that an inmate has a property interest in the balances held in his accounts.").  Furthermore, state law provides that inmates must be afforded a "due process hearing" and be found guilty before medical restitution for repayment of the costs of self-inflicted injuries may be ordered.  RSA § 622:31-a(VII).  Accordingly, the court concludes that Fowler had a protected property interest in the funds that were at stake in his disciplinary hearing.

    B.  <u>Due Process and Waivers in Disciplinary Hearings</u>

    The minimum due process requirements associated with prison disciplinary hearings affecting protected interests are written notice of the charges, the ability to call witnesses and present documentary evidence (when doing so is consistent with institutional safety and correctional concerns), a hearing before an impartial decisionmaker, and a written statement as to the evidence relied on and the reasons for the hearings officer's decision.  See <u>Surprenant v. Rivas</u>, 424 F.3d 5, 16 (1st Cir. 2005); <u>see also</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 564-66 (1974); <u>Smith v. Mass. Dep't of Corr.</u>, 936 F.2d 1390, 1401 (1st Cir. 1991); <u>Campbell v. Miller</u>, 787 F.2d 217, 224 n.12 (7th Cir. 1986) (due process hearings that suffice under <u>Wolff</u> satisfy Fourteenth Amendment due process requirements for "the entry of . . . restitution and impoundment orders").  In

addition, due process requires that the decision be supported by "some evidence" in the record, although a court may not use that requirement on review to second-guess the disciplinary board's "factual findings or decisions with respect to appropriate punishment." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455-56 (1985).

Procedural due process protections triggered by the risk of loss of a protected property interest may be waived. See Boddie v. Connecticut, 401 U.S. 371, 378-79 (1971). The existence of a "waiver of constitutional rights in any context must, at the very least, be clear." Fuentes v. Shevin, 407 U.S. 67, 95 (1972) (emphasis in original). Courts "'do not presume acquiescence in the loss of fundamental rights'" and "'indulge every reasonable presumption against waiver.'" Id. at 94-95 (citations omitted). In reviewing the validity of such a waiver, courts consider the circumstances in which the waiver was obtained. See generally id. Pleas and waivers of procedural due process rights outside of the context of a criminal prosecution need not be accompanied "by a formal colloquy of the depth and intensity required under Federal Rule of Criminal Procedure 11." United States v. Correa-Torres, 326 F.3d 18, 23 (1st Cir. 2003) (considering process required where individual pleads guilty to violations of conditions of

probation or supervised release and waives procedures required
by Fed. R. Crim. P. 32.1).

C.    2013 and 2016 Charges – Guilty Pleas and Waivers

Fowler received notice of the charges against him in 2013
and 2016, see doc. nos. 13-2, 13-4, and notice that restitution
was ordered as a sanction because of his guilty pleas, doc. no.
13-2, at 4, 5; doc. no. 13-3; doc. no. 13-4, at 2; doc. no. 13-
5.  No disciplinary hearing was held on either charge, however,
as Fowler pleaded guilty by signing the relevant disciplinary
reports directly beneath the statement: "I desire to plead
guilty to the charges.  I waive my right to a hearing and my
right to appeal.  I admit to the facts and circumstances as
described above."  Doc. No. 13-4, at 2; Doc. No. 13-2, at 4.
The "facts and circumstances described" above Fowler's signature
on both of the disciplinary reports include a description of the
charged conduct, its designation as a major or minor
disciplinary infraction, the report of the officer who
investigated the charge, and the recommended sanctions,
specifically, in relevant part, "restitution for medical
expenses imposed" as to the 2013 charge, and "100% medical
restitution – all medical treatment charges (transport, hospital
treatment, medication costs, etc.)" as to the 2016 charge.  See
Doc. No. 13-4; Doc. No. 13-2.  On its face, each of the guilty

pleas, each waiver of Fowler's rights to a hearing, and each
statement of the recommended sanction of medical restitution is
unambiguous. The restitution orders imposed upon him were
supported by "some evidence," consisting of his pleas of guilt
and the corrections officers' written descriptions of the
incidents, in conformity with the procedural requirements of the
Fourteenth Amendment set forth in Hill, 472 U.S. at 455-56.[6] See
Straub v. Griffith, No. 1:19-CV-11-JAR, 2019 WL 873703, at *4,
2019 U.S. Dist. LEXIS 28047, at *9-*10 (E.D. Mo. Feb. 21, 2019)
(inmate ordered to pay $250 in restitution for property he
damaged while on suicide watch was not denied due process, where

---

[6]While the First Circuit has not addressed the question, a
Ninth Circuit case, Bostic v. Carlson, 884 F.2d 1267 (9th Cir.
1989), overruled in part on other grds. by Nettles v. Grounds,
830 F.3d 922, 932 (9th Cir. 2016), and cases from other
jurisdictions citing Bostic, have held that hearing officers in
prison disciplinary proceedings are not "constitutionally
required to ascertain that [an inmate's] guilty plea was
voluntary." Id. at 1272; accord Rychwalski v. Clayton, No.
CIV.A. GLR-12-2259, 2013 WL 3009301, at *5, 2013 U.S. Dist.
LEXIS 83754, at *13 (D. Md. June 14, 2013) ("Unlike a judge in a
criminal trial, a hearing officer in a disciplinary proceeding
is not required to ascertain whether an inmate's guilty plea is
voluntary." (citing Bostic, 884 F.2d at 1272)), aff'd, 540 F.
App'x 201 (4th Cir. 2013) (per curiam); Hunter v. Tilton, No.
08-CV-01460JAMCHSP, 2010 WL 2089377, at *8, 2010 U.S. Dist.
LEXIS 50497, at *23 (E.D. Cal. May 20, 2010) (same). The court
in Bostic based its holding on precedent finding that the
colloquy required by Fed. R. Crim. P. 11 and the Due Process
Clause is not required in probation revocation proceedings, and
on cases finding that still less procedural protections are
extended to inmates in prison disciplinary proceedings. This
court notes that such precedent could provide the foundation for
a defense of qualified immunity to Claim 1.

he had been given chance to defend himself and chose instead to plead guilty and waived a further hearing, and the corrections officer's written disciplinary report describing the incident sufficed to constitute "some evidence" to support hearing officer's decision).

Fowler argues that each plea and waiver of rights was invalid as he had a diagnosed mental illness. Fowler, however, does not provide this court with any information suggesting that his mental illness had an impact on his ability to admit guilt or waive a hearing freely and knowingly. "Mere evidence of diagnostic labels without content tying them to capacity to give valid consent is inadequate to create an issue as to the consequences of the disorders on an individual's capacity to give valid consent." Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 13 (1st Cir. 1997). Nothing before this court suggests that there may be a triable issue as to whether Fowler's mental illness rendered his guilty pleas invalid.

Fowler also asserts in the Complaint that his guilty pleas and waivers of rights were not valid to the extent they resulted in medical restitution orders, as he did not know he would have to pay any appreciable amount of restitution when he signed the waivers and admitted his guilt. Specifically, Fowler asserts that he believed he had health insurance that would cover the entire cost of care for his self-inflicted injuries.

Although neither the disciplinary report for the 2013 charge, nor the report for the 2016 charge provides any estimate of the amount of restitution Fowler would have to pay, both disciplinary reports explicitly include "medical restitution" as a recommended sanction. Fowler asserts that he believed he had "prisoner's health insurance" to cover the full amount. Nothing in the record, however, suggests that Fowler was unaware that his medical expenses for treatment outside of the prison would have to be paid, in the first instance, by someone, the prisoner's "health insur[er]" or the prison, as to whom restitution could be paid. Furthermore, at the time of Fowler's plea of guilty to the 2016 charge, Fowler had already received the August 2015 notice stating that he owed $809.24 to the State in restitution as a sanction for his guilty plea to the 2013 charge. Under such circumstances, Fowler's assertions in the Complaint regarding his beliefs about insurance coverage do not generate a genuine issue of material fact as to whether his admissions of guilt and waivers of procedural due process rights in prison disciplinary proceedings were valid. Accordingly, defendants' motion (Doc. No. 13) as to Claim 1 is granted.


III. Substantive Due Process (Claims 2 and 3)

Claims 2 and 3 are Fowler's claims that the imposition of restitution as a disciplinary sanction for both the 2013 Charge

18

and 2016 Charge, and the debiting of inmate funds to satisfy his restitution obligation, violated Fowler's Fourteenth Amendment substantive due process rights. Fowler asserts that the DOC had an obligation to pay for the treatment of his self-injuries, as they resulted from his severe mental illness.

To state a claim that state action violates substantive due process, a plaintiff must allege facts showing that the state actor's conduct "objectively 'shocks the conscience.'" S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc., 775 F.3d 82, 91 (1st Cir. 2014) (citation omitted). "'[T]he requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error.'" Id.

DOC policies at all pertinent times provided a process for an inmate with a documented serious and persistent mental illness to avoid paying money damages, if his disciplinary infraction was determined to be a proximate result of his SPMI. See PPD 5.25, Attach. 2, at 1. It is undisputed that Fowler had some awareness of the SPMI process in December 2013 as the investigator noted that Fowler was working with his clinician to be designated as having an SPMI. Even if Fowler could offer expert evidence here generating a factual issue as to whether either or both of the disciplinary charges at issue proximately resulted from his serious mental illness, such evidence would not affect the disposition of Fowler's substantive due process

claim; it is undisputed here that DOC records at the time of the 2013 charge did not list Fowler has having an SPMI, and nothing before this court suggests that prison officials interfered with Fowler's ability to obtain an SPMI designation, at any time, relative to the incidents giving rise to the charges at issue.

Furthermore, the undisputed evidence here demonstrates that the amount of restitution at issue is equal to the costs incurred by the DOC for Fowler's transport and treatment by third party health care providers.

> "A hallmark of [a] successful [substantive due process] challenge[] is an extreme lack of proportionality, as the test is primarily concerned with 'violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'"

González-Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir. 2010) (quoting Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002) (en banc) (ellipses in original).  The test is context-specific: "[I]n situations 'where actual deliberation on the part of a governmental defendant is practical, the defendant may be held to have engaged in conscience-shocking activity' by exercising 'deliberate indifference.'"  Gonzalez-Fuentes, 607 F.3d at 881 (quoting Coyne v. Cronin, 386 F.3d 280, 288 (1st Cir. 2004) (to show deliberate indifference, plaintiff must, "at a bare minimum, demonstrate that [defendants] actually knew of a

substantial risk of serious harm to him and disregarded that risk").

Nothing before this court demonstrates that the hearing officers who accepted Fowler's pleas were actually aware of the dimensions of Fowler's mental illness or of his beliefs and misperceptions regarding health insurance.  Restitution orders obligating Fowler to repay the amount paid by the prison to third party health care providers for his disciplinary offenses does not shock the conscience under the circumstances. Therefore, defendants' dispositive motion on Claims 2 and 3 is granted, and those claims are dismissed.

IV.  <u>Excessive Fines (Claim 4)</u>

Fowler's Claim 4 asserts that the amount of restitution violates his Eighth Amendment right not to be subjected to an excessive fine.

> We have never held that the Excessive Fines Clause of the
> Eighth Amendment applies to restitution.  The circuits that
> have considered challenges to restitution orders under the
> Excessive Fines clause have held that where the restitution
> order reflects the amount of the victim's loss no
> constitutional violation has occurred. . . . This is not
> surprising, as restitution is inherently proportional,
> insofar as the point of restitution is to restore the
> victim to the status <u>quo ante</u>.  Restitution is distinct in
> this regard from forfeiture . . . .

United States v. Newell, 658 F.3d 1, 35 (1st Cir. 2011)
(citations omitted).  Where the record is undisputed that the
amount of restitution at issue is equal to the amounts incurred
by the DOC to pay for the cost of treating Fowler's injuries,
the restitution amount for which Fowler is responsible is not
excessive under the circumstances.  Defendants' motion for
summary judgment on the Eighth Amendment excessive fines claim
is properly granted.


V.    State Law Claims (Claim 5)

        As this Order disposes of all of the federal claims in this
action, the court declines to exercise supplemental jurisdiction
over, and dismisses, without prejudice, the state law claims
asserted in the Complaint, numbered here as Claim 5.  See 28
U.S.C. § 1367(c)(3) (court may decline to exercise supplemental
jurisdiction over state law claims where the court has dismissed
all claims over which it has original jurisdiction).


                              Conclusion

        For the foregoing reasons, the court grants defendants'
motion for summary judgment (doc. no. 13), in part, as to the
claims numbered as Claims 1, 2, 3, and 4 in this Order, and as
to all claims asserted against defendant Michael Zenk.  The

court dismisses Claim 5 without prejudice, as the court declines to exercise supplemental jurisdiction over that claim.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

March 11, 2019

cc:  Herbert A. Fowler, pro se
     Anthony Galdieri, Esq.
     Lawrence Edelman, Esq.